UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OLIVEIRA, Lucia Goncalves and<br>DE OLIVEIRA, Adelio Bento<br><br>    Plaintiffs,<br><br>v.<br><br>JOSEPH B. EDLOW, Director of US Citizenship and Immigration Services,<br>TODD M. LYONS, Acting Director Immigration and Customs Enforcement, Boston Field Office<br>PATRICIA HYDE, Field Office Director,<br>MICHAEL KROL, HSI New England Special Agent in Charge, and<br>KRISTI NOEM, U.S. Secretary of Homeland Security, PAMELA BONDI, U.S. Attorney General, DONALD J. TRUMP, President of the US<br><br>    Defendants. | Case No. 1:25-cv-13228<br><br>**CIVIL COMPLAINT** |

## INTRODUCTION

1. Plaintiff Lucia Goncalves Moreira Oliveira and Adelio Bento de Oliveira ("Plaintiff" or "Plaintiffs") are Brazilian nationals with a pending I-918: Petition for U Nonimmigration Status ("U Visa") and a pending Motion to Reopen filed with the Board of Immigration Appeals ("BIA").[1]

2. The government provided Plaintiffs with an apparent path to relief where Ms. Oliveira qualifies for relief as a victim of a crime in the United States and Mr. De Oliveira as a rider. In place of a process through which they might make this case, both were left with an impossible circumstance, surrounded by agencies unwilling to give them recourse. On one side,

---

[1] A Temporary Restraining Order will be filed with this complaint forthwith.

1

the United States Customs and Immigration Service ("USCIS") gave them the promise of fair adjudication of their claim for relief under a U Visa. On another side, Immigration and Customs Enforcement ("ICE") threatened them with removal before a bona fide determination, rendering any benefit from the determination moot should they be outside of the United States. Further, on another side, the Board of Immigration Appeals ("BIA"), has failed to adjudicate their Motion to Reopen and thereby precluding Plaintiffs from a Petition for Review.

3. Congress and USCIS have long recognized the importance of U Visas to support survivors of serious crimes and law enforcement's ability to investigate and gain the trust of foreign nationals to prosecute criminals. *See Victims of Trafficking and Violence Protection Act of 2000*, Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464, 1533 (Oct. 28, 2000) ("VTVPA") (*codified* at 8 U.S.C. § 1101(a)(15)(U)).

4. A 2021 USCIS Policy Memo created the process of a bona fide determination (BFD) by which U Visa petitioners can receive work authorizations and deferred action if they meet certain discretionary standards. *See 2021* USCIS Policy Alert at 2, https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf. This policy was adopted to address the increase of volume of U Visa petitions and the growing backlog so that USCIS can better support victims of domestic and sexual assault who have been helpful to law enforcement in the prosecution or investigation of those crimes. This protection of victims was what Congress contemplated when they passed the Victims of Trafficking and Violence Protection Act ("VTVPA").

5. A BFD allows for the issuance of interim benefits to applicants and qualifying family members: they can work and receive deferred action or parole, if necessary. 8 C.F.R. § 214.14(d).

6. Under the BFD process, USCIS must first determine whether a pending petition for nonimmigrant status is *bona fide*. Unless the petitioner poses a risk to national security or public safety, USCIS may grant a noncitizen a Bona Fide Determination Employment Authorization Document ("BFD EAD") and deferred action for the period of the BFD EAD. A BFD and placement on a waiting list for a visa further allows principal or derivative applicants who are abroad to enter the United States. *Id*.

7. Even though BFD's are meant to alleviate elongated processing times and provide petitioners with relief, the ministerial act of making a BFD now takes more than five years, according to USCIS's published processing times.

8. In a recent 2025 Guidance to ICE Personnel, ICE recently reversed decades of consistent DHS policy that created a presumption against detention and removal of noncitizen survivors of serious crimes in favor of detention whenever possible, so long as it does not disrupt criminal prosecution. *See* 2025 ICE Policy Memo at www.ice.gov/doclib/foia/policy/11005.4.pdf.

9. Plaintiffs allege violations of the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1227(d)(1), and the Administrative Procedure Act § 706(2)(A) and (B).[2]

## PARTIES

10. Plaintiff, Lucia Goncalves Moreira Oliveira, has a pending U Visa petition and a pending Motion to Reopen. Plaintiff is a resident of Malden, Massachusetts.

11. Plaintiff, Adelio Bento de Oliveira, has a pending U Visa petition as a rider and a pending Motion to Reopen. Plaintiff is a resident of Malden, Massachusetts.

---

[2] Plaintiffs appear to be putative members of the class in the recently filed lawsuit *Immigration Center for Women and Children v. Noem*, 2:25-cv-09848 (C. D. Cal. October 14, 2025) (class certification pending on a Motion from October 30, 2025).

12. Defendant Joseph B. Edlow is Director of United States Citizenship and Immigration Services. In his official capacity, he oversees the adjudication of U nonimmigrant visas and BFDs.

13. Defendant Todd Lyons is named in his official capacity as the Acting Director for U.S. Immigration and Customs Enforcement. As the Senior Official Performing the Duties of the Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States and is legally responsible for pursuing any effort to remove the Plaintiffs; and therefore, is a custodian of the Plaintiffs.

14. Defendant Patricia Hyde is sued in her official capacity as the Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Defendant Hyde is a legal custodian of Plaintiffs.

15. Defendant Michael Krol is sued in his official capacity as the HSI New England Special Agent in Charge. In this capacity, Defendant Krol is a legal custodian of Plaintiffs.

16. Defendant Kristi Noem is sued in her official capacity as Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Defendant Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, oversees ICE, and responsible for defending the BIA should it deny Plaintiffs' Motion to Reopen. Defendant Noem is a legal custodian of Plaintiffs.

17. Defendant Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Defendant Bondi is a legal custodian of Plaintiffs.

18. Defendant Donald J. Trump is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of State and Department of Homeland Security.

## VENUE AND JURISDICTION

19. This Court may decide claims under the APA pursuant to its federal question jurisdiction under 28 U.S.C. § 1331.

20. Under the APA, this Court can compel agency action on unlawful or unreasonable delays for discreet, nondiscretionary duties of federal administrative agencies. 5 U.S.C. §§ 555(b), 706.

21. Venue is proper because Plaintiffs are in custody in the state of Massachusetts, which is within the jurisdiction of this District. While Plaintiffs are not in detention, they are in custody because of their GPS ankle monitors required by ICE.

22. Venue is proper in this District because Defendants are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to his claims occurred in this District, and Plaintiff resides in this District. There is no real property involved in this action. 28 U.S.C. § 1391(e).

23. Plaintiffs are appropriately joined under Federal Rule of Civil Procedure 20(a)(1)(A) because they assert a right to relief jointly or severally with respect to and arising out of the same series of transactions or occurrences.

24. Under Fed. R. Civ. P. Rule 20, persons may join in one action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

25. "[J]oinder of claims, parties and remedies is strongly encouraged," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966), and the "policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits." *Puricelli v. CAN Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999); *see also Nazario v. Deere & Co.*, 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003).

26. The questions of law and narrow scope of relief concerning a reasonable time for the adjudication of BFDs associated with nonimmigrant U Visa petitions is common to all Plaintiffs and thus strongly favors joinder of Plaintiffs' claims in this civil action. *Id*.

27. Under 8 USC 1252(a)(5), judicial review of an order of removal must be done by a Court of Appeals, not District Court. However, here Plaintiffs do not ask for an invalidation of a removal order. Rather, they request that this Court order the processing of their BFD. In order to benefit from this determination, they must remain in the United States.

28. 8 USC 1252(b)(9) and 8 USC 1252(g) do not bar this court from ruling on this issue or granting injunctive relief. These provisions do not allow this Court to review challenges to "action[s] taken . . . to remove [them] from the United States" or the respondents' decisions "to execute removal orders" against them. 8 USC 1252(b)(9), (g). In *Reno v. Am.-Arab Anti-Discrimination Comm.*, the Supreme Court noted that § 1252(g) is much narrower in that "the provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" 525 U.S. 471 (1999). Here, however, Plaintiffs merely request that this Court rule that due process requires that ICE wait to execute the removal order until a BFD is issued on their U Visa petition. *See Portillo Vasquez v. Turek*, Case No. 2:25-cv-741 at *6 (D. Vt. Sept. 25, 2025) (holding that where Petitioner was not challenging removal proceedings, jurisdiction is proper).

29.     8 USC 1252(f)(2) does not bar this court from ruling on this issue or granting injunctive relief. While the statute states that "no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law," Plaintiffs' case can once again be distinguished because they do not request an permanent injunction with regard to their removal order, only a stay until the BFD can be issued from USCIS. 8 USC 1252(f)(2).

## STATEMENT OF FACTS

30.     Plaintiffs are citizens of Brazil. Plaintiffs have resided in the United States for approximately five years with their 17-year-old son.

31.     On or about November 12, 2021, Plaintiffs entered the United States through Mexico at the Southern Border. They were detained in a facility in Arizona for several days before being released.

32.     The Plaintiffs' release was contingent upon their participation in an Alternatives to Detention (ATD) program. They have continued to comply with SmartLINK monitoring and regular check-in appointments.

33.     The basis for Plaintiffs' U-Visa petition is Ms. Oliveira's victimization in a violent crime and her full cooperation with law enforcement, including the Boston Police Department.

34.     On or about August 20, 2023, Plaintiff was robbed and sexually assaulted on the street in Boston, Massachusetts. She and her husband hired an attorney to file a U-Visa petition but unbeknownst to her, he never filed it on her behalf.

35.     On or about August 17, 2024, Plaintiffs attended their individual merits hearing.

36.     On or about January 16, 2025, Plaintiffs were ordered removed.

37. In March 2025, the Plaintiffs were ordered to begin wearing an ankle monitor to track their location.

38. Her attorney at the time failed to inform them about the BIA appeal deadline, in addition to never filing Ms. Oliveira's U-Visa application. Subsequently, Plaintiff hired new pro bono counsel.

39. On or about March 19, 2025, Plaintiffs, through new counsel, filed U Visa petition.

40. On or about April 22, 2025, Plaintiffs filed a Motion to Reopen, Motion to Remand, and a Motion to Stay. Stay was granted to being with, but BIA eventually denied the Motion to Remand lifted the Stay. The BIA never adjudicated the Motion to Reopen.

41. On or about April 28, 2025, Plaintiffs' counsel went to the ICE office to request an I-246 Application for Stay of Deportation of Removal. The ICE officer told him that he should not bother submitting it as they would likely deny the request. He further stated that since 2018, they have received almost 10,000 stays and they have only approved 8.

42. On or about September 19, 2025, Plaintiffs were told that they had to make arrangements to leave by October 3, 2025, or they would be detained.

43. On or about September 19, 2025, the Plaintiffs re-filed the Motion to Reopen and Emergency Stay of Removal with the BIA based on their pending U-Visa application and the failure of their previous counsel to adequately represent them.

44. Plaintiffs were ordered to appear at the Burlington office on Friday September 26 with itineraries in hand or else they would be detained. When they complied with the order, they told them to return on October 2 to pick up their passport prior to their planned October 3 departure.

45. On or about September 30, 2025, the BIA denied the request for stay of removal but did not rule on their Motion to Reopen. Because their Motion to Reopen is still pending, they are unable to request a Petition for Review.

46. On or about October 2, Plaintiffs were ordered to check in with ICE. The same day their counsel filed a habeas corpus petition in the District Court of Massachusetts and Judge Sorokin granted them a stay while that case was adjudicated.

47. On or about October 24, 2025, Judge Sorkon denied the habeas petition and the stay was lifted. The same day, ICE officers began contacting Plaintiffs and ordered them to check in the following business day.

48. On or about October 27, 2025, Plaintiffs checked in with ICE. They purchased plane tickets to depart from the U.S. back to Brazil for the following week, on November 3. ICE Officers said to them that if they had not purchased plane tickets that day, they would have detained them. They also threatened their 17-year-old child with arrest and deportation once he turned 18 the following month.

## CLAIMS FOR RELIEF

### COUNT ONE
### DHS's 2025 Policy is Arbitrary and Capricious in Violation of the Administrative Procedures Act § 706(2)(A)

49. The allegations in the above paragraphs are realleged and incorporated herein.

50. Under the APAs courts "shall. hold unlawful and set aside agency action" that is, among other things, "arbitrary, capricious, [or] an abuse of discretion. " 5 U.S.C. § 706(2)(A).

51. The 2025 Guidance is reviewable under the APA because it constitutes "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. This is because it marks the consummation of Respondents' decision-making process and is an action

"from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 156 (1997) (citation omitted).

52.     The 2025 Guidance reversed decades of consistent DHS policy that created a presumption against detention and removal of noncitizen survivors of domestic violence, human trafficking, and other serious crimes, in favor of a policy of detention and deportation whenever possible, so long as it does not disrupt a criminal prosecution.

53.     The only explanation provided for this change is the statement in the Invasion Executive Order regarding "'total and efficient enforcement of the [immigration] laws' against all inadmissible and removable" individuals. *See* 2025 DHS Guidance at 2. Respondents' scant reasoning fails the APA's "requirement that [the agency] provide a reasoned explanation for its action" and is therefore arbitrary and capricious. *Dep't of Homeland Sec. v. Regents of the Univ. of California,* 591 U.S. 1, 35 (2020). Importantly, the Guidance fails to address the reliance interests of noncitizens who were courageous enough to report the crime they endured and applied for the protections that Congress and Respondents promised in return.

54.     Defendants' scant reasoning fails the APA's "requirement that [the agency] provide a reasoned explanation for its action" and is therefore arbitrary and capricious. *Regents*, 591 U.S. at 35.

55.     Further, 8 CFR § 214.14(c)(ii) does not preclude Plaintiffs from relief. While the regulation is clear that the filing of a U Visa petition should not influence ICE's authority to execute a final order, the creation of the BFD process itself alters its meaning. *See 2021 USCIS Policy Memo*. DHS seems to have contemplated that the BFD process would work together with this regulation to ensure that execution of a removal order would not be made without a BDF, absent some compelling circumstances.

56. Here, there appears to be a deliberate attempt to withhold a BFD from the Plaintiffs, which is arbitrary, capricious, and contrary to the regulations. 5 U.S.C. § 706(2)(A).

57. Further, executing removal orders to those waiting for their BFD for more than six months is in excess of statutory authority because it undermines the central tenet of the VTVPA, which is to protect victims of crimes and ensure that they work with law enforcement. If Plaintiffs are to be removed, they will not be able to work with law enforcement and will be precluded from receiving any protection.

**COUNT TWO**
**INA § 237(d)(1) – The Blind Removal Policy Violates 8 U.S.C. § 1227(d)(1)**

58. The allegations in the above paragraphs are realleged and incorporated herein.

59. Under 8 U.S.C. § 1227(d)(1), when a person with a pending U Visa petition requests a stay of a removal order, Defendants must determinate whether the pending petition demonstrates a prima facie eligibility.

60. "Looking to the plain language of the Statute, it is clear that the Statute establishes the prima facie determination as a pre-condition to the Secretary granting or denying an administrative stay of removal." *Jimenez v. Dep't of Homeland Sec.*, Case No. 222-CV-00967-SSS-JPRX, 2022 WL 19410308, at *3 (C.D. Cal. Nov. 14, 2022). Thus, because the "secretary's prima facie determination is a non-discretionary pre-requisite to the action described in the second segment," only "following the prima facie determination, [does] the Secretary [have] the discretion to grant or deny a request for an administrative stay." *Id.* (citing 8 U.S.C. § 1227(d)(1)).

61. Defendants engage in a policy and practice of removing people with pending U who have requested a stay, without first seeking or obtaining a prima facie determination from USCIS as required by § 1227(d)(1). The practice is enabled by the 2025 Guidance, which

11

authorizes ICE to seek expedited prima facie determinations only when it is "ICE's best interests," but not when it is in the petitioner's best interests.

62. Because Defendants engage in a Blind Removal Policy of denying stay of removal for U Visa petitioners without first determining their prima facie eligibility for relief, the Blind Removal Policy violates INA § 237(d) (1).

## COUNT THREE
### Removal with a Pending U Visa without a Prima Facie Determination Violates the Fifth Amendment Due Process Clause

63. The allegations in the above paragraphs are realleged and incorporated herein.

64. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

65. The United States government is obligated by federal and international law, to hear the claims of noncitizens, regardless of their status, who have been witnesses and victims to crimes in this country and who are cooperating with law enforcement. In attempting to remove the Plaintiffs when they have a pending U Visa petition and motion to reopen, Defendants abridge Plaintiffs procedural due process rights and undermine the faith of noncitizens that they may apply for immigration benefits for which they are eligible.

66. Congress intended the U Visa process to be set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity when it passed the VTVPA in October 2000. P.L. 106-386 § 102, 114 Stat. 1464, 1466 (codified at 22 U.S.C. § 7101 (2018). Even the conference report describes U Visas as tools to help survivors. *See* H.R. Rep. No. 106-939 at 111. When immigration authorities have created a process by which noncitizens and

immigrations can apply for lawful status and they are prevented from accessing and applying for that relief, "there is a chilling effect on due process." *Portillo Vasquez v. Turek*, Case No. 2:25-cv-741 (D. Vt. Sept. 25, 2025).

67. The Department's threatened detention and impending deportation of Plaintiffs impedes their ability to avail themselves of the U Visa process, for which Ms. Oliveira is facially eligible, in violation of their Fifth Amendment right to Due Process. The articulable liberty interest here is to be free from undue interference while undertaking the process of filing a U Visa application and receiving a bona fide determination. *See S.N.C. v. Session,* 325 F. Supp. 3d 401, 211 (S.D.N.Y. 2018) (finding Petitioner made a "strong showing" that she is likely to succeed on the merits of her due process claim became Petitioner has a right to make the [visa] applications and have them fully adjudicated *without undue interference*." (emphasis added)); *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004) ("The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference.").

68. Further, the benefits of a BFD, deferred action and work authorization, can only be enjoyed if the applicant remains in the United States. *See* 8 CFR § 214.14(d)(2) ("USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members.").

69. Noncitizens who have been ordered removed have the statutory right to file motions to reopen their cases. See 8 U.S.C. § 1229a (c)(7). Plaintiffs' removal would prevent them from seeing the result of their filed Motion to Reopen because under 8 C.F.R. § § 1003.2(d) and 1003.23(d)(1), a motion to reopen cannot be made if an alien is deported or removed. Such removal shall "constitute a withdrawal of such motion." 8 C.F.R. § 1003.2(d).

70. Plaintiffs pending Motion to Reopen with the BIA has yet to be adjudicated. Because the Motion to Stay was denied but the Motion to Reopen remains pending, Plaintiffs are unable to file a Petition for Review.

71. The Due Process Clause and the INA grant Plaintiffs the right to counsel to challenge their removal, and to a fair proceeding before they are removed from the country. 8 U.S.C. § 1362; *Leslie v. Attorney General*, 611 F.3d 171, 181 (3d Cir. 2010) (holding that the Fifth Amendment and immigration statute affords a noncitizen right to counsel of her own choice); *Amadou v. INS*, 226 F.3d 724, 726-27 (6th Cir. 2000) (noting that noncitizens have "due process right to a full and fair hearing"). Plaintiffs' previous counsel did not adequately represent them when he neither timely filed an appeal of their removal order nor submitted a U Visa petition following Ms. Oliveira's violent and traumatic encounter in 2023. This ineffective assistance of counsel, which was remedied by their new representation, should not prevent Plaintiffs from seeing their U Visa or motion to reopen case through to its conclusion.

72. For these reasons, Defendants' failure to adjudicate Plaintiffs' U Visa or Motion to Reopen while simultaneously effectuating their immediate removal violates the Due Process Clause of the Fifth Amendment.

## COUNT THREE
### Writ of Mandamus to Compel USCIS and the BIA

73. Pursuant to 28 U.S.C. §1331, and 28 U.S.C. §1361, Plaintiffs ask this Court to redress the deprivation of rights, privileges and immunities secured to Plaintiffs to compel Defendants USCIS and the BIA to perform the duty they owe to Plaintiffs.

74. USCIS has willfully and unreasonably delayed in having refused to adjudicate Plaintiffs' bona fide determination for their U Visa, thereby depriving them of the benefit of work authorization and deferred action, and the peace of mind that they are entitled to as victims.

75. The BIA has not ruled on Plaintiffs' Motion to Reopen despite it twice appearing before it. Plaintiffs cannot file a Petition for Review on the denied stay because the Motion to Reopen is still pending, thereby precluding them from relief.

76. Defendants owe Plaintiffs a duty to adjudicate the Motion to Reopen and U Visa Petition and have unreasonably failed to perform that duty.

77. Plaintiffs have exhausted any administrative remedies that may exist.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request this Court to grant the following:

(1) Assume jurisdiction over this matter.

(2) Issue a Writ of Mandamus to compel Defendant USCIS to adjudicate Plaintiffs U Visa and issue a bona fide determination.

(3) Issue a Writ of Mandamus to compel Defendant BIA to adjudicate Plaintiffs pending Motion to Reopen.

(4) Declare Defendants delay in making a bona fide or waitlist determination on Plaintiffs properly filed principal U Nonimmigrant Visa petition is unreasonable.

(5) Declare that removing Plaintiffs without first determining whether they are prima facie eligible for relief violations 8 U.S.C. 1227(d)(1), the Due Process Clause of the Fifth Amendment, and APA § 706(2)(A) and (B).

(6) Enjoin Defendant from arresting, detaining, or removing Plaintiffs outside the United States until USCIS makes a bona fide or waitlist determination or BIA rules on the pending Motion to Reopen.

(7) Restrain ICE from taking retaliatory measures against the Plaintiffs for the filing of this Complaint.

(8) Award Plaintiffs attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(9) Grant any further relief this Court deems just and proper.

          Respectfully submitted,

**Lucia Goncalves Moreira Oliveira**
**Adelio Bento de Oliveira**

By and through their counsel,

Dated: 10/31/2025

/s/ *Todd C. Pomerleau*
Todd C. Pomerleau, Esq.
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077
Fax: (617) 367-0071
rubinpom@rubinpom.com
MA BBO#664974

/s/ *Alexandra M. Even*
Alexandra M. Even, Esq.
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077
Fax: (617) 367-0071
rubinpom@rubinpom.com
MA BBO#715126

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Plaintiffs, Lucia Goncalves Moreira Oliveira, and submit this verification on their behalf. I hereby verify that the factual statements made in the foregoing Complaint are true and correct to the best of my knowledge.

Dated this 31st day of October, 2025.

          /s/*Todd C. Pomerleau*
          Todd C. Pomerleau