UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LUCIA GONCALVES OLIVEIRA, et al,

Plaintiffs,

v.

JOSEPH B. EDLOW, *Director of US Citizenship and Immigration Services*, et al,

Defendants.

Case No. 25-cv-13228-BEM

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Earlier this year, Plaintiffs Lucia Goncalves Moreira Oliveira and Adelio Bento de Oliveira were ordered removed from the country.  They subsequently filed an application for a U-visa with U.S. Citizenship and Immigration Services (USCIS) and two motions to reopen their removal proceedings with the Board of Immigration Appeals (BIA).  Although Plaintiffs do not contest the validity of their removal orders, they claim that "ICE's decision to execute [their] removal" *now*— while their U-visa application and second motion to reopen remain pending—violates the Due Process Clause and other federal laws.  Doc. No. 8 at 4.  They therefore seek a preliminary injunction prohibiting ICE from executing their removal orders pending the resolution of this case.  The jurisdiction stripping provisions of 8 U.S.C. § 1252, however, deprive the Court of jurisdiction over Plaintiffs' claims.  By its express terms, Section 1252(g) eliminates district court jurisdiction over "any cause or claim" challenging ICE's "decision or action" to "execute removal orders," which naturally includes the agency's decision over *when* to execute a removal order.  8 U.S.C. § 1252(g).  Accordingly, the Court should deny Plaintiffs' motion for a preliminary injunction.

## II.    BACKGROUND

### A.    Legal Framework

In 1996, Congress "comprehensive[ly]" amended the Immigration and Nationality Act (INA) through passage of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA).  *INS v. St. Cyr*, 533 U.S. 289, 292 (2001).  Among other reforms, IIRIRA eliminated district court jurisdiction to oversee the removal of aliens and provided that the courts of appeals oversee the immigration system exclusively through petitions for review.  *See* 8 U.S.C. § 1252 (codifying IIRIRA's judicial review provisions).  Following the Supreme Court's ruling in *St. Cyr*, Congress again amended the INA through the REAL ID Act of 2005.  The REAL ID Act repeatedly inserted language into the relevant provisions of 8 U.S.C. § 1252, clarifying that their jurisdiction-stripping effects apply notwithstanding any other provision of law, whether "statutory or nonstatutory."  REAL ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231 (2005).

Section 1252(g) specifically deprives district courts of jurisdiction to review "any cause or claim by or on behalf of any alien arising from the decision or action by [the Secretary of Homeland Security] to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).[1]  This provision is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999) ("*AADC*").  Section 1252(g) thus protects the government's authority to make "discretionary determinations" over whether and when to execute removal orders, "providing that if they are reviewable at all, they at

---

[1] The Attorney General once exercised all this authority, but much of it has been transferred to the Secretary of Homeland Security.  *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485.

### B. Factual Background

Plaintiffs "are a married couple who have lived together, with their son, in the United States since 2021." *Oliveira et al v. Lyons et al*, Case No. 1:25-cv-12859-LTS (D. Mass. Oct. 24, 2025), ECF Doc. 11 at 1. "When they crossed the border from Mexico, they were arrested and detained by U.S. Customs and Border Protection ('CBP')." *Id.* CBP subsequently released them, and the government "initiat[ed] removal proceedings." *Id.* Plaintiffs allege that, in "August 2023, Goncalves Oliveira was the victim of a robbery and assault in Boston, and she cooperated with the police investigation that followed." *Id.* Plaintiffs further allege that, "[i]n the wake of that event," they "hired a lawyer to represent them in their removal proceedings and assist them in applying for a U Visa (a visa available to certain crime victims who assist law enforcement)." *Id.*

Plaintiffs' "removal proceedings progressed to a full hearing before an immigration judge ('IJ')." *Id.* On August 7, 2024, "[t]he IJ ordered [Plaintiffs] removed, and [Plaintiffs] appealed." *Id.* On January 16, 2025, the BIA dismissed the appeal, rendering Plaintiffs' orders of removal final. *See id.* "Thereafter, [Plaintiffs] hired a new lawyer and learned that their former counsel had not initiated the U Visa application process." *Id.* at 3. Thus, on March 19, 2025, Plaintiffs—through their new lawyer—filed an application for a U-visa. *See id.*

"In early April, ICE notified [Plaintiffs] of a departure plan providing them four weeks to self-deport." *Id.* Plaintiffs "took steps to comply, but they also filed motions asking the BIA to reopen their removal proceedings and to stay the order of removal." *Id.* "The BIA stayed their removal pending its consideration of the motion to reopen, delaying ICE's departure timeline." *Id.* "On August 7, however, the BIA denied the motion to reopen and directed [Plaintiffs] to self-

deport." *Id.*[2]  Plaintiffs then "filed a second pair of motions asking the BIA again to stay removal and reopen their removal proceedings on September 25, 2025." *Id.*  "This time, however, the BIA promptly denied the motion to stay." *Id.*  "ICE set a new self-deportation deadline of October 3." *Id.*  Plaintiffs did not, however, comply.

Instead, Plaintiffs filed petitions for writs of habeas corpus asking this Court to "[e]njoin [the government] from removing [them] without first providing [them] with sufficient time to see [their] U Visa Petition and Motion to Reopen through."  *Oliveira et al v. Lyons et al*, Case No. 1:25-cv-12859-LTS (D. Mass. Oct. 2, 2025), ECF Doc. 1 at 11; *see Bento de Oliveira v. Lyons et al*, Case No. 25-cv-12862-LTS (D. Mass. Oct. 2, 2025), ECF Doc. 1 at 11.  Another session of this Court (Sorokin, J.) denied the petitions, finding that it lacked jurisdiction to grant their requested relief.  *See Oliveira et al v. Lyons et al*, Case No. 1:25-cv-12859-LTS (D. Mass. Oct. 24, 2025), ECF Doc. 11 at 6.  Plaintiffs then filed this action and a motion for a preliminary injunction.  Doc. No. 1; Doc. No. 2.  Plaintiffs again seek an order enjoining Defendants from executing their final orders of removal while their U-visa application and second motion to reopen remain pending.

## III.    STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The moving party "bears the burden of satisfying each of these four elements," using evidence to support its contentions.  *Akebia Therapeutics, Inc.*

---

[2] Plaintiffs allege that "[t]he BIA never adjudicated the [first] Motion to Reopen."  Doc. No. 1 at 8.  That is incorrect.  As Judge Sorokin found, the BIA "denied [this] motion to reopen" on August 7, 2025.  *Oliveira et al v. Lyons et al*, Case No. 1:25-cv-12859-LTS (D. Mass. Oct. 24, 2025), ECF Doc. 11 at 1; *see also* Exhibit A (Aug. 7, 2025, Notice of BIA Decision).  Thus, at that point, Plaintiffs could have filed a petition for review and a motion for a stay with the First Circuit.

*v. Azar*, 443 F. Supp. 3d 219, 225 (D. Mass. 2020).  But, even then, "[a] preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*, 555 U.S. at 24; *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").

## IV.    ARGUMENT

### A.  Plaintiffs cannot establish a likelihood of success on the merits because the Court lacks jurisdiction to decide their claims.

#### 1.  Section 1252(g) bars the Court from exercising jurisdiction.

Section 1252(g) unambiguously strips district courts of jurisdiction "to hear any cause or claim" challenging "the decision or action" by the government to "execute removal orders." 8 U.S.C. § 1252(g).  Here, Plaintiffs concede that they have valid removal orders.  *See* Doc. No. 1 at 6–7.  But they contend that "ICE's decision to execute [their] removal" *now*—while their U-visa application and second motion to reopen remain pending—violates federal law.  Doc. No. 8 at 4; *see also* Doc. No. 1 at 14 (claiming that "effectuating their immediate removal violates the Due Process Clause").  Specifically, Plaintiffs claim that "ICE's decision to execute [their] removal" at this juncture "violates [the] INA §1227(b), [the] APA § 706, and their Constitutional Due Process rights under the Fifth Amendment."  Doc. No. 8 at 4.  They therefore ask the Court to enjoin ICE from executing their removal order—to stay their removal—until their U-visa application or second motion to reopen has been adjudicated.  *See* Doc. No. 1 at 15.  No matter how phrased, Plaintiffs' "cause or claim"—including their motion for a preliminary injunction—

directly challenges the legality of ICE's "decision or action" to "execute [their] removal orders." 8 U.S.C. § 1252(g).

The fact that Plaintiffs seek only to enjoin ICE from removing them *at this time* does not render their claim any less of a challenge to the government's "decision or action" to "execute removal orders." Plaintiffs claim that the law "requires that ICE wait to execute the removal order until a [bona fide determination] is issued on their U Visa petition." Doc. No. 1 at 6. But as several courts have recognized—and even Plaintiffs seem to concede—the government's "discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it." *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020); *see* Doc. No. 8 at 4 (acknowledging that Section 1252(g) would bar a claimant's challenge to the "exercise of ICE's discretion to decide whether and when to carry out his removal order") (citing *Balogun v. Sessions*, 330 F. Supp. 3d 1211, 1212 (C.D. Cal. 2018)). Plaintiffs' challenge to ICE's decision to "effectuat[e] their *immediate* removal"—while their U-visa application and second motion to reopen remain pending—necessarily constitutes a challenge to ICE's decision over *when* to execute their removal orders. Doc. No. 1 at 14 (emphasis added). Section 1252(g) therefore bars the Court from hearing their claim. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (construing Section 1252(g) to cover "not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding").

Moreover, the fact that Plaintiffs have sued defendants other than ICE does not change the outcome. Plaintiffs "claim[] that [defendants] are violating federal law by proceeding with [their] removal before making a *prima facie* determination on [their] U-Visa application. *Mingrone v. Adducci*, No. 2:17-cv-11685, 2017 WL 4909591, at *4 (E.D. Mich. July 5, 2017). The resolution of their claims against *any* defendant would thus require deciding whether "it is unlawful for ICE

to execute the final order of removal at this time (and until USCIS makes a *prima facie* determination)." *Id.*  Indeed, if ICE agreed to wait to execute Plaintiffs' removal orders, Plaintiffs "would have no 'cause or claim' to pursue." *Balogun*, 330 F. Supp. 3d at 1212.  Their claims against all defendants thus "'aris[e] from' ICE's 'decision' to "execute [their] removal order." *Id.*

Regardless, as Plaintiffs recognize, the relevant "cause or claim" for purposes of resolving their motion for a preliminary injunction is their challenge to "ICE's decision to execute [their] removal."  Doc. No. 8 at 4.  Plaintiffs cannot *preliminarily enjoin the execution of their removal orders* without challenging *the legality of executing their removal orders*.  Amicus observes that "the jurisdictional analysis necessarily centers on the 'action being challenged' rather than the 'relief sought.'"  Doc. No. 10 at 15.  But the relief sought by a plaintiff obviously relates to and sheds light on the action being challenged.  And the fact that Plaintiffs seek to preliminarily enjoin ICE from removing them confirms that the "action being challenged" is ICE's decision to remove them at this time.  "In other words, the claim, and not just the relief requested, is that it is unlawful for ICE to execute the final order of removal at this time (and until USCIS makes a *prima facie* determination)." *Mingrone*, 2017 WL 4909591, at *4.  Section 1252(g), however, prevents district courts from entertaining that type of challenge.

Amicus further contends "the ultimate relief that Plaintiffs would be awarded if they prevailed in these claims is not a stay of removal."  Doc. No. 10 at 15.  Rather, a "determination of Plaintiffs' claims" merely "requires their removal to be stayed for a period of time." *Id.*  Thus, amicus attempts to characterize the requested stay of removal as not the object of Plaintiffs' case, but an incidental byproduct of adjudicating their real claims on the merits.  Respectfully, that reformulation does not work.  For starters, "the ultimate relief that Plaintiffs would be awarded if they prevailed in these claims" *is*, in fact, a stay of removal. *See* Doc. No. 1 at 15 (requesting that

the Court "[e]njoin Defendant from arresting, detaining, or removing Plaintiffs outside the United States until USCIS makes a bona fide or waitlist determination or BIA rules on the pending Motion to Reopen").  Moreover, staying Plaintiffs' removal "for a period of time" would only be "require[d]" if their removal during that period would likely violate the law.  To so find, however, would require the Court to entertain their "claim" challenging the legality of ICE's decision to "execute" their removal orders at this time—something it cannot do in light of Section 1252(g).

Insofar as amicus claims that the Court may stay Plaintiffs' removal simply to preserve its jurisdiction over claims that do not fall within the scope of Section 1252(g)—i.e., to prevent such claims from being rendered moot—that contention still fails.  True, the All Writs Act authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions."  28 U.S.C. § 1651(a).  But the statute "can only be invoked in aid of jurisdiction the court already has." *Tavares v. Massachusetts*, 59 F. Supp. 2d 152, 154 (D. Mass. 1999).  And the Court does not have jurisdiction over any of Plaintiffs' claims for the reasons just discussed.  Even if it did, Section 1252(g) expressly strips district courts of jurisdiction to hear any cause or claim arising from the decision or action to execute removal orders, "notwithstanding" "section[] . . . 1651 of [Title 28]"—i.e., the All Writs Act.  8 U.S.C. § 1252(g).  Thus, Section 1252(g) "strip[s] this Court of its jurisdiction to issue" a stay of removal pursuant to the All Writs Act, even where the government's removal of a plaintiff would "render moot" claims over which the district court *does* have jurisdiction to hear.  *Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass. 2006).[3]

---

[3] Another session of this Court found it possible that a *court of appeals* could stay a removal pursuant to the All Writs Act to preserve its jurisdiction where the BIA had not yet ruled on a motion to reopen.  *Duarte v. Souza*, No. 17-cv-12450-IT, 2018 WL 2422006, at *6 (D. Mass. May 29, 2018).  Nonetheless, it still recognized that "whether a Writ should issue[] to preserve appellate review . . . is for the court of appeals, not the district court."  *Id.*

In sum, the only way that Plaintiffs could ever preliminarily enjoin their removal is to challenge the legality *of removing them* at this time. Section 1252(g) precludes district courts from hearing such a challenge. That is why this Court has repeatedly found that Section 1252(g) precludes it from temporarily enjoining—i.e., staying—the execution of a final order of removal. *See, e.g.*, *Dambrosio v. McDonald*, No. 25-cv-10782-FDS, 2025 WL 1070058, at *3 (D. Mass. Apr. 9, 2025) ("[Petitioner] asserts that he should be permitted to *remain* in the United States while his visa applications are reviewed. This Court, however, does not have jurisdiction to issue a stay of the final removal order pending resolution of his visa applications."); *Anderson v. Moniz*, No. 21-cv-11584-FDS, 2022 WL 375231, at *7 (D. Mass. Feb. 7, 2022) ("the Court cannot grant petitioner a stay of removal because it lacks jurisdiction under § 1252."); *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) ("the Court simply lacks jurisdiction to grant a stay of a final order of removal"); *Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019) ("The decision to stay removal is part and parcel of the administrative process of executing a removal order: A decision not to grant a stay of removal is in effect a decision to execute a removal order, and vice versa."); *Tejada*, 424 F. Supp. 2d at 298 ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."). The Court should do the same and deny Plaintiffs' motion.

## 2. The decisions of this Court and others confirm that Section 1252(g) applies.

This Court has several times addressed the issue presented by Plaintiffs' complaint and motion for a preliminary injunction: whether Section 1252(g) strips jurisdiction over claims challenging ICE's execution of a removal order *before* the adjudication of a pending motion or application for immigration relief. Most notably, just a few weeks ago, Judge Sorokin considered the same claim by the same Plaintiffs in the context of a petition for a writ of habeas corpus. There,

Plaintiffs similarly claimed that "attempting to remove [them] when [they] [have] a pending U Visa petition and motion to reopen" violates the Due Process Clause and "constitutes an unlawful change in policy that is arbitrary and capricious" and contrary to law. *Oliveira et al v. Lyons et al*, Case No. 1:25-cv-12859-LTS (D. Mass. Oct. 2, 2025), ECF Doc. 1 at 7, 10; *see Bento de Oliveira v. Lyons et al*, Case No. 25-cv-12862-LTS (D. Mass. Oct. 2, 2025), ECF Doc. 1 at 7, 10.

After receiving briefing from both sides on the precise issue, Judge Sorokin concluded that Section 1252(g) "bar[red]" Plaintiffs' efforts to secure "an order 'enjoining Respondents from removing Petitioners without first providing them with sufficient time to see the U Visa Petition and Motion to Reopen through.'" *Oliveira et al v. Lyons et al*, Case No. 1:25-cv-12859-LTS (D. Mass. Oct. 24, 2025), ECF Doc. 11 at 6 (citation omitted, alterations adopted). Although Judge Sorokin's ruling may not have a binding and preclusive effect on these proceedings, it still warrants respect and at minimum calls for an explanation as to why Section 1252(g) would apply in that case but not this one. Plaintiffs' motion, however, does not even mention Judge Sorokin's ruling— much less attempt to distinguish it on legal grounds.

As another example, in *Aziz v. Chadbourne*, No. 07-cv-11806-GAO, 2007 WL 3024010 (D. Mass. Oct. 15, 2007), the plaintiff faced imminent deportation even though USCIS had yet to adjudicate his pending I-485 application "seeking an adjustment of his status, an action that would supersede the removal order." *Id.* at *1. The plaintiff therefore sought a stay of his removal, arguing that "his removal before a full adjudication of [his] adjustment of status application [was] an arbitrary and capricious denial of his due process rights." *Amri Aziz v. Chadbourne et al*, No. 1:07-cv-11806-GAO (D. Mass. Sept. 25, 2007), ECF Doc. 8 at 2. The Court, however, denied the motion, reasoning that "[a]ny stay of the final order of removal would squarely interfere with the 'execut[ion]' of the removal order." *Aziz*, 2007 WL 3024010, at *1. The Court concluded that it

"ha[d] no jurisdiction to make the requested order," "[g]iven the express language in § 1252(g)." *Id.* The plaintiff in that case had also claimed that "it is unreasonable" for the Secretary of Homeland Security "not to act immediately on [an adjustment-of-status] application when [the applicant's] removal is about to occur." *Id.* at *2. But the Court explained that "[a] judgment that the Secretary was acting unreasonably in not deciding the adjustment question before he executed the removal would impose a restriction, or a pre-condition, on his unqualified ability to execute the removal order," and that "[s]uch an order would run afoul of § 1252(g)." *Id.*

Similarly, in *Compere v. Riordan*, 368 F. Supp. 3d 164 (D. Mass. 2019), the plaintiff was subject to a final order of removal and filed suit against several DHS, USCIS, and ICE officials, "alleging that they [had] unlawfully deprived [him] the opportunity to adjudicate his application for adjustment of status." *Id.* at 165. The plaintiff sought to compel USCIS to adjudicate the application and filed a motion for a preliminary injunction to stay his removal pending the resolution of his request. *Id.* The Court denied the preliminary injunction because it "simply lack[ed] jurisdiction to grant a stay of a final order of removal." *Id.* at 170. As with Plaintiffs here, the plaintiff there was "subject to a final order of removal and [sought] to enjoin ICE from enforcing that order of removal." *Id.* at 171. The Court, however, found that the motion for a preliminary injunction fell "directly within the jurisdictional bar set by" Section 1252(g). *Id.*

Likewise, in *Candra v. Cronen*, 361 F. Supp. 3d 148 (D. Mass. 2019), the Court held that Section 1252(g) applied to a claim challenging ICE's removal of the petitioner while his second motion to reopen remained pending with the BIA. *Id.* at 156. The petitioner argued that ICE's refusal to stay his removal while his motion to reopen was pending violated the Due Process Clause. *Id.* The Court, however, explained that "[t]he decision to stay removal is part and parcel

of the administrative process of executing a removal order," and therefore declined "to stay [the plaintiff's] removal until the BIA rule[d] on his latest motion to reopen." *Id.* at 154, 156.

Moreover, in *Jimenez v. Nielsen*, 334 F. Supp. 3d 370 (D. Mass. 2018), several habeas petitioners claimed that "ICE's attempts to remove [them] before they [could] pursue and receive a decision on their applications for provisional waivers" violated the INA, the Due Process Clause, and the agency's regulations. *Id.* at 375. The Court, however, found "that § 1252(g) applie[d] to the legal question raised by petitioners' claim." *Id.* at 383. As with Plaintiffs here, the petitioners in that case argued that "ICE [could not] execute their removal orders and thus eliminate the availability of" certain immigration benefits—there, provisional waivers. *Id.* at 384. But, as the Court explained, this "legal claim" was a "direct challenge to the decisions to execute their removal orders," and therefore fell within the scope of Section 1252(g). *Id.* True, the Court ultimately found that the application of Section 1252(g) in that case violated the Suspension Clause, but the Suspension Clause does not apply in this case, which is not a petition for a writ of habeas corpus.

Although the First Circuit has not addressed the precise issue, several other Courts of Appeals have agreed with this Court's decisions finding that Section 1252(g) applies to claims challenging the execution of a removal order *before* the adjudication of a pending motion or application for immigration relief.[4] For instance, in *Tazu v. Att'y Gen. United States*, 975 F.3d 292 (3d Cir. 2020), the appellant had filed suit to enjoin the government "from executing his valid removal order while he trie[d] to reopen his removal proceedings and to get a Provisional Unlawful Presence Waiver." *Id.* at 294. He specifically "challenge[d] the timing of his removal, asserting

---

[4] Notably, however, the First Circuit once observed that if a petitioner *had* sought to challenge the government's decision to "wait[]" "to prosecute [his] [immigration] case" for three months on the grounds that the three-month delay precluded him from applying for a discretionary immigration benefit, that decision over timing "would not be reviewable in any court" because of Section 1252(g). *Mattis v. Reno*, 212 F.3d 31, 35 n.9 (1st Cir. 2000), *abrogated on other grounds*.

that removing him [at that time] would interfere with his due process right to stay here while applying for a provisional waiver and appealing the denial of his motion to reopen." *Id.* at 295. The Third Circuit, however, concluded that Section 1252(g) barred the district court from exercising jurisdiction over that challenge. The court explained that, to execute a removal order, the government "must choose a date for that removal." *Id.* at 297. And so "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it." *Id.* "Both" decisions "are covered by" Section 1252(g). *Id.*

Similarly, the Ninth Circuit has explained that "[t]he decision whether to remove aliens subject to valid removal orders who have applied for U-visas is entirely within the Attorney General's discretion." *Velarde-Flores v. Whitaker*, 750 F. App'x 606, 607 (9th Cir. 2019). Thus, the petitioners' attempt in that case "to enjoin [their] removal" pending the adjudication of their U-visa applications "facially [fell] within the statutory jurisdictional bar" of Section 1252(g). *Id.* And, in another case, the petitioner had "challenge[d] ICE's decision not to delay his removal pending the adjudication of his application for relief under [the Deferred Action for Childhood Arrivals program]." *Garcia-Herrera v. Asher*, 585 F. App'x 439, 440 (9th Cir. 2014). The court explained that "this constitutes a challenge to ICE's decision to execute a removal order," and therefore concluded that the district court lacked jurisdiction under Section 1252(g). *Id.*; *see also E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) (finding that petitioner's challenge to "DHS's decision to execute her removal order while she seeks administrative relief" "falls directly in § 1252(g)'s path").

In addition, "[m]any district courts" in and outside of the First Circuit "have likewise held that the jurisdictional bar imposed by § 1252(g) extends to claims where the alien challenges the timeframe in which authorities seek to remove him, as well as to the specific relief of a stay from

removal." *Viana v. President of United States*, No. 18-cv-222-LM, 2018 WL 1587474, at *3 (D.N.H. Apr. 2, 2018). For example, in *Mingrone v. Adducci*, No. 2:17-cv-11685, 2017 WL 4909591, at *4 (E.D. Mich. July 5, 2017), the petitioner claimed that the government was "violating federal law by proceeding with his removal before making a *prima facie* determination on his U-Visa application." *Id.* at *4. "In other words, the claim, and not just the relief requested, [was] that it [was] unlawful for ICE to execute the final order of removal at [that] time (and until USCIS [made] a *prima facie* determination)." *Id.* The district court in that case concluded that the petitioner's claim "[arose] out of ICE's act of executing a removal order and [was] therefore the type of claim over which [the] Court ha[d] no jurisdiction." *Id.*; *see also, e.g.*, *Balogun*, 330 F. Supp. 3d at 1215 ("courts have had no difficulty concluding that denials of stays of removal— even with pending U-visa applications—are unreviewable under section 1252(g)").

### 3. Plaintiffs challenge ICE's discretionary decision over when to execute their removal orders.

Plaintiffs and amicus also argue that Section 1252(g) does not apply because Plaintiffs "raise a purely legal challenge"—as opposed to a challenge to the government's "discretionary decision to execute a removal order." Doc. No. 8 at 3; *see also* Doc. No. 10 at 15–18. But, as explained above, Plaintiffs' claim that ICE may not lawfully execute their removal order at this time (before they receive a decision on their U-visa application or second motion to reopen) necessarily constitutes a challenge to ICE's decision over *when* to execute their removal order. *See* pp. 5–6, *supra*. And "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it." *Tazu*, 975 F.3d at 297; *see also Velarde-Flores*, 750 F. App'x at 607 ("The decision whether to remove aliens subject to valid removal orders who have applied for U-visas is entirely within the Attorney General's discretion.").

14

Plaintiffs characterize the challenged action here as non-discretionary based on a misguided syllogism—namely, that (i) ICE's decision to execute their removal orders now (before they receive a decision on their U-visa application or second motion to reopen) violates the law, and (ii) ICE has "has no discretion to violate the law."  Doc. No. 8 at 3.  That reasoning fails, however, as it would mean that every challenge to ICE's execution of a removal order constitutes a challenge to a non-discretionary decision—rendering Section 1252(g) a complete nullity.  To state the obvious, Section 1252(g) bars district courts from hearing *legal* challenges—i.e., "any cause or claim"—arising from the government's decision or action to execute removal orders, 8 U.S.C. § 1252(g), including "constitutional as well as statutory claims."  *Candra*, 361 F. Supp. 3d at 156.  And every lawsuit challenging ICE's execution of a removal order is a claim that doing so would, in some way, violate the law—such as the Due Process Clause, the APA, or the INA.  Section 1252(g) therefore must bar district court jurisdiction over claims that ICE's execution of a removal order would violate the law, even though ICE "has no discretion to violate the law."

"Any other rule would gut § 1252(g)."  *Tazu*, 975 F.3d at 298.  Any plaintiff "could restyle any challenge to the three actions listed in § 1252(g) as a challenge to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law."  *Id.*  The question is therefore whether the government has discretion to take the challenged act as a general matter—not whether the exercise of that discretion in a particular case has allegedly violated the law.  As the Supreme Court explained in *AADC*, Section 1252(g) came about precisely because litigants were claiming that the government's failure to, among other things, defer the execution of removal orders in particular cases violated the law—including the Due Process Clause and Equal Protection Clause.  *See AADC*, 525 U.S. at 484–85.  Section 1252(g) thus "seems clearly designed to give some measure of protection to 'no deferred action' decisions

and similar discretionary determinations." *Id.* at 485. The facts of *AADC* itself help prove the point. In that case, the petitioners claimed that the government's commencement of their removal proceedings violated the First and Fifth Amendments. *See id.* at 474. And, of course, the government does not have "discretion to violate" the First and Fifth Amendments. But that did not stop the Supreme Court from holding that Section 1252(g) applied. *See id.* at 487.[5]

Plaintiffs' description of their case as "purely legal" does not affect the analysis, either. There is no exception to Section 1252(g) for whatever a party may characterize as a pure question of law. *See Rranxburgaj v. Wolf*, 825 F. App'x 278, 282 (6th Cir. 2020) ("We are aware of no other exception to § 1252(g) that would allow for review of pure questions of law."). To be sure, in *St. Cyr*, the Supreme Court held that federal courts retained jurisdiction to adjudicate a habeas claim raising a pure question of law, despite a prior version of Section 1252, to avoid a conflict with the Suspension Clause. *See INS v. St. Cyr*, 533 U.S. 289, 305, 314 (2001). But, in response to *St. Cyr*, Congress enacted the REAL ID Act of 2005, expressly eliminating habeas review and making petitions for review in the circuit court of appeals the exclusive means for judicial review of all orders of removal. Thus, any purported "exception" to Section 1252(g) allowing district courts to adjudicate pure questions of law in a habeas petition no longer exists in light of the REAL ID Act. *See Enwonwu v. Gonzales*, 438 F.3d 22, 33 (1st Cir. 2006) ("Now, under the provisions of the REAL ID Act, Congress has eliminated habeas review as to most types of immigration claims.").

---

[5] Plaintiffs' reliance on *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025), is also misplaced. In that case, this Court found that Section 1252(g) did not bar jurisdiction over a challenge to the government's "authority to effectively *depart from the removal orders* by designating new countries for removal outside of the immigration proceedings." *Id.* at 377 (emphasis added); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 999 (9th Cir. 2025) (finding that Section 1252(g) did not apply where plaintiff "d[id] not challenge ICE's discretionary authority about 'when' to remove him or 'whether' to remove him," but rather "object[ed] to ICE's separate decision about 'where' to send him"). Here, by contrast, Plaintiffs seek to challenge the government's discretionary decision over when to execute their removal orders.

**4. Even if Plaintiffs sought to challenge a non-discretionary decision, Section 1252(g) would still apply.**

Regardless, Section 1252(g) applies to discretionary and non-discretionary decisions alike. Section 1252(g) expressly reaches "*any* cause or claim . . . arising from the decision or action by the [Secretary] to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g) (emphasis added). To be sure, those actions often involve "discretion" on the part of the Executive Branch, and Congress sought to protect that discretion from judicial review. *AADC*, 525 U.S. at 486. But nothing in Section 1252(g) limits its sweep to only the discretionary aspects of the specified actions; rather, its text reaches "any" "action" taken to "execute removal orders." *See Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) ("this reference [in *AADC*] to discretionary decisions did not say that § 1252(g) applies *only* to discretionary decisions, notwithstanding plain language that includes no such limitation"). Congress knows how to limit jurisdiction-stripping provisions to only discretionary actions. *See, e.g.*, 8 U.S.C. § 1226(e) ("The [Secretary's] discretionary judgment regarding the application of this section shall not be subject to review."). Thus, the fact that Congress could easily have drafted the statute, through clear and simple language, to accomplish that result—but chose not to do so—indicates that the enacted language does not carry Plaintiffs' interpretation. *See Jimenez*, 334 F. Supp. 3d at 383 ("Unlike other provisions in § 1252, [subsection (g)] does not limit itself to 'discretionary' decisions.").

If Section 1252(g) only barred challenges to discretionary decisions, then it would never apply to claims brought pursuant to the Mandamus and Venue Act, 28 U.S.C. § 1361, which authorizes courts to hear claims alleging that a government official has violated a "nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Indeed, that is effectively what Plaintiffs argued in response to the Court's show-cause order. *See* Doc. No. 8 at 7 ("Plaintiffs' assert that this Court has proper jurisdiction over the matter . . . to issue a Writ of

Mandamus."). Yet, Section 1252(g) expressly provides that its jurisdiction-stripping provision applies "notwithstanding any other provision of law," including—specifically—28 U.S.C. § 1361. *See Jian Wang v. Wolf*, 511 F. Supp. 3d 1060, 1068 (C.D. Cal. 2021) ("there is no Mandamus Act [] exception to the jurisdiction-stripping effect of § 1252(g)"). In other words, the text of Section 1252(g) directly refutes the contention that it applies only to discretionary decisions.

At bottom, the relevant inquiry here concerns whether a plaintiff's claim arises from ICE's decision to execute a removal order—not whether it implicates discretionary or non-discretionary decisions. But, again, the Court need not reach this issue because Plaintiffs' motion clearly challenges ICE's discretionary decision over when to execute their removal orders.

## B. The remaining preliminary injunction factors weigh in favor of Defendants.

Because Plaintiffs have not established a "reasonable likelihood of success on the merits of [their] claim for a stay of removal," the Court need not "address the other prerequisites for injunctive relief." *Compere*, 368 F. Supp. 3d at 172. Nonetheless, the remaining factors weigh in favor of declining to issue a preliminary injunction.

To start, Plaintiffs have failed to establish irreparable harm. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Akebia*, 443 F. Supp. 3d at 231 (citation omitted). Accordingly, a plaintiff's "[d]elay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action." *Id.* Here, Plaintiffs received final orders of removal on January 16, 2025, and applied for a U-visa on March 19, 2025. *See* Doc. No. 1 at 7, 8. Yet, they did not file suit seeking to enjoin their removal (initially, as a habeas petition with Judge Sorokin) until *more than six months later*—on October 2, 2025. *See Oliveira et al v. Lyons et al*, Case No. 1:25-cv-12859-LTS (D. Mass. Oct. 2, 2025), ECF Doc. 1; *Bento de Oliveira v. Lyons et al*, Case No. 25-

cv-12862-LTS (D. Mass. Oct. 2, 2025), ECF Doc. 1. "This unexplained delay suggests that plaintiff[s] [are] not facing an 'immediate and irreparable injury, loss, or damage'" attributable to the government, as opposed to their own delay. *Alegria-Zamora v. U.S. Dep't of Homeland Sec.*, No. 18-2102-DDC-GLR, 2018 WL 1138280, at *2 (D. Kan. Mar. 2, 2018) (citing Fed. R. Civ. P. 65(b)(1)). Likewise, Plaintiffs concede that they could have sought a stay of removal pending the adjudication of their U-visa petition from ICE. Doc. No. 1 at 8. Their allegation that an "ICE officer" told their counsel that ICE "would likely deny the request" cannot reasonably excuse their failure to even *attempt* to obtain such a stay. *Id.*[6]

Plaintiffs have also failed to demonstrate that "the balance of equities and consideration of the public interest" favor a preliminary injunction. *Winter*, 555 U.S. at 32. Traditionally, a court first determines whether the movant's likely harm "will outweigh the harm which granting the injunction would inflict on [the defendant]." *7-Eleven, Inc. v. Grewal*, 60 F. Supp. 3d 272, 283 (D. Mass. 2014). And then it considers whether "[t]he public interest weighs in favor of granting" the preliminary injunction. *Id.* at 285. But where, as here, government actors are the defendants, these factors simply "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

This factor weighs in the government's favor. Plaintiffs do not dispute that they have valid final orders of removal. *See* Doc. No. 1 at 6 ("Plaintiffs do not ask for an invalidation of a removal order."). And it is well settled that the public interest in the enforcement of the United States' immigration laws is significant. *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58 (1976); *Nken*, 556 U.S. at 435. Indeed, there is "always a public interest in prompt execution

---

[6] Plaintiffs also did not file a petition for review or seek a stay with the First Circuit following the BIA's denial of their first motion to reopen. *See Oliveira et al v. Lyons et al*, Case No. 1:25-cv-12859-LTS (D. Mass. Oct. 24, 2025), ECF Doc. 11 at 3 ("The record before the Court does not describe any effort by Petitioners, at any point during the above-described proceedings, to seek a stay or review of their removal orders in the First Circuit.").

of removal orders." *Nken*, 556 U.S. at 436. As the Supreme Court has explained, "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id*. (quoting *AADC*, 525 U.S., at 490). Granting the preliminary injunctive relief that Plaintiffs seek would therefore harm the public interest.

### C. If the Court grants a preliminary injunction, it should require Plaintiffs to post security.

Finally, if the Court grants Plaintiffs' requested preliminary injunction—which it should not for all of the foregoing reasons—it should order security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). If the Court issues a preliminary injunction here, it should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction.

## V.    CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: November 18, 2025            By:    */s/ Michael L. Fitzgerald*
                                           MICHAEL L. FITZGERALD
                                           Assistant United States Attorney
                                           U.S. Attorney's Office
                                           1 Courthouse Way, Ste. 9200
                                           Boston, MA 02210
                                           (617) 748-3266
                                           michael.fitzgerald2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

<u>*/s/ Michael L. Fitzgerald*</u>
MICHAEL L. FITZGERALD
Assistant U.S. Attorney

Dated:  November 18, 2025