**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OLIVEIRA, Lucia Goncalves and DE OLIVEIRA, Adelio Bento <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH B. EDLOW, Director of US Citizenship and Immigration Services, TODD M. LYONS, Acting Director Immigration and Customs Enforcement, Boston Field Office PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, and KRISTI NOEM, U.S. Secretary of Homeland Security, PAMELA BONDI, U.S. Attorney General, DONALD J. TRUMP, President of the US <br><br> Defendants. | Case No. 1:25-cv-13228 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

### I.    Introduction

In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act ("VTVPA"), entitling noncitizens to apply for relief known as a U visa. A meritorious U visa claim involves cooperation with law enforcement after falling victim to a crime in the United States. In June 2021, Citizenship and Immigration Services ("USCIS") implemented a policy of issuing Bona Fide Determinations ("BFDs") to identify applications that established prima facie eligibility. Six months later, U.S. Immigration and Customs Enforcement ("ICE") issued a policy to refrain from taking civil immigration enforcement action against those known to have pending applications for victim-based immigration benefits, in observance of the VTPA. In 2025, ICE issued a new policy directive rescinding and superseding the 2021 deferred-action policy. Ms. Lucia Goncalves Moreira Oliveira is an applicant for a U visa who experienced a robbery and sexual assault in Boston, MA. She brings a challenge to the policy that would rescind the practice of refraining from civil immigration enforcement against her under the Administrative Procedure Act ("APA").

### II.    Procedural History

On October 31, 2025, Plaintiffs filed a complaint alleging a violation under the Administrative Procedure Act, the Immigration and Nationality Act, and the United States Constitution. On November 3, 2025, the Court granted a Motion for Temporary Restraining Order and restrained Defendants from removing Plaintiffs from the District of Massachusetts. On February 4, 2026, Defendants filed a Motion to Dismiss. This filing is a timely Opposition to the Motion to Dismiss.

### III.    Standard

Courts may dismiss a claim under Rule 12(b)(1) if they lack jurisdiction to decide them. In determining whether plaintiffs have met their burden, the court "take[s] as true all well-pleaded

facts in the plaintiffs' complaint[], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009). Defendants argue 8 U.S.C. § 1252(g) presents a jurisdictional bar to this Court's review of Plaintiff's APA claim. Doc. No. 32 at 7. In relevant part, § 1252(g) is a narrow jurisdictional bar applying only to the decision or action to (1) commence removal proceedings, (2) adjudicate cases, or (3) execute removal orders.      *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Where a policy revokes a deferred action program and its associated benefits, that recission is not a decision to "commence proceedings," much less to "adjudicate" a case or "execute" a removal order. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.* 591 U.S. 1, 8 (2020).

Normally, survive a motion to dismiss for failure to state a claim, a claim need not set forth detailed factual allegations, but must contain sufficient factual matter to state a claim of relief that is plausible on its face. Privitera v. Curran, 855 F.3d 19, 25 (1st Cir. 2017). If the facts articulated are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint is vulnerable to a motion to dismiss. *SEC v. Tambone,* 597 F.3d 436, 442 (1st Cir. 2010) (en banc). The applicable standard is to accept all factual allegations as true and… draw all reasonable inferences in favor of the plaintiff. *Rodriguez-Ortiz v. Marao Caribe, Inc.*, 490 F.3d 92, 96 (1st Cir. 2007); *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009).

The plausibility standard is a screening mechanism designed to weed out cases that do not warrant either discovery or trial. *See, e.g., Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012). Because APA litigation requires neither discovery nor trial, the plausibility standard has no place in APA review. *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). The relevant inquiry is not

whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's decision. *Id*.

## IV. Argument

### A. The Court has jurisdiction to grant Plaintiff relief.

#### a. § 1252(g) does not apply.

This Court has already found that "the 2025 Policy constitutes at least a partial recission of the U visa interim relief system," making it distinct from a commencement of proceedings, adjudication, or execution of a removal order. Doc. No. 24 at 15. The APA has a "basic presumption" of judicial review. *Abbott Labs. v. Gardner*, 387 U. S. at 140. When a categorical policy does not commence removal proceedings, adjudicate cases, or execute removal orders, it is reviewable under the APA. *Regents* 591 U.S. 1, 8 (2020). Here, the Defendants argue that because the 2025 Interim Guidance rescinded a policy to not take enforcement action against certain individuals, it is a policy of executing removal orders, rather than a rescission of a deferred action program with associated benefits. Doc. No. 32 at 9. This is true only if one views the policy in complete isolation. The government enacted the 2021 policy in concert with the BFD process to provide relief for people awaiting U visa adjudication. Taken together, the 2021 policies establish a program of deferred action designed to protect U visa applicants from removal. Indeed, both the 2021 BFD policy and ICE Directive 11005.3 refer to *themselves* as policies of "deferred action." Policy Manual, USCIS, *Bona Fide Determination Process* (20230 https://niwaplibrary.wcl.american.edu/wp-content/uploads/Chapter-5-Bona-Fide-Determination-Process-_-USCIS.pdf; ICE Directive 11005.3 at 2. It is true that these directives are exercises of prosecutorial discretion, but Defendants neglect that the policies exercise that discretion by granting deferred action.

Plaintiffs bring this challenge to the issuance of the 2025 policy that rescinds the 2021 policy. Simply put, the issuance of a blanket policy goes beyond the scope of execution of a removal order. The suit, therefore, is not subject to a bar of jurisdiction from § 1252(g).

### b.  The 2025 Interim Guidance constitutes final agency action.

To qualify as "final" an agency action must satisfy "two conditions." *Bennett v. Spear*, 520 U.S. 154, 177 (1997). First, the action must (1) mark the consummation of the agency's decision-making process and (2) must be "one by which rights or obligations have been determined, or from which legal consequences will flow." *Id*. At 177-78 (internal quotation marks omitted).

The 2025 Interim Guidance marks the consummation of the agency decision-making process. The Defendants have not yet disputed this. Instead, Defendants argue that the Interim rule does not determine any rights or obligations. Doc. No. 32 at 12. Agency action is final if it constitutes a ""'definitive statement [] of [the agency's] position' with 'direct and immediate' consequences." Trafalgar Capital Assocs., Inc. v. Cuomo, 159 F.3d 21, 35 (1st Cir. 1998) (quoting *FTC v. Standard Oil Co*., 449 U.S. 232, 241, 66 L. Ed. 2d 416, 101 S. Ct. 488 (1980)) (alterations in original). Here, the consequences for the Plaintiffs and similarly situated people are both direct and immediate. ICE has made a statement of policy that they will rescind the deferred action program that previously protected them. Plaintiffs are now subject to enforcement action where they once were not.

Defendants contend that because the 2021 policy states that it "[was] not intended, [did] not, and may not be relied upon to create any right or benefit," an action rescinding that policy cannot be final agency action. Doc. No. 32 at 12 (quoting ICE Directive 11005.3). The Court need not decide whether the 2021 policy created legal rights, but rather whether its rescission marks the consummation of a process from which legal consequences will flow. Exposure to detention and

removal is a legal consequence and the Court should reject Defendants' argument that it is merely "practical." *Id.* at 13.

Courts in the First Circuit do not accept the dichotomy between practical and legal consequences. *See Ass'n of Int'l Auto Mfrs., Inc. v. Comm'r, Mass Dep't of Env't Prot.*, 208 F.3d 1,5 (1st Cir. 2000) (Agency action is final if it constitutes a definitive statement of the agency's position with direct and immediate consequences). Even so, the recission of a deferred action approach for U visa applicants creates legal consequences for those applicants. Civil immigration detention and removal from the United States under the color of law are not merely "practical." Instead, they represent decisions of agencies to churn Plaintiffs through the machinery of enforcement rather than that of adjudication. Whether the government reviews a person's application for relief or arrests that person is a legal distinction. The government derives that authority from different statutes and separates those actions into distinct departments. The fact that the 2021 policy may not have directly conferred legal rights *to the Plaintiff* is immaterial.

### c. The Court may compel USCIS to make a BFD

Plaintiff alleges that Defendants delayed making her BFD in violation of due Process and the APA. Defendants take the extraordinary position that even if ICE or USCIS is bound by its guidance, that guidance does not determine obligations. Doc. No. 32 at 14. The 2021 BFD notice creates a process by which applicants may receive determinations of prima facie eligibility. That process therefore combines with the due process protections under the APA and Constitution to form a procedure applicants may reasonably expect when applying for a U visa. Defendants assert that this is purely discretionary. *Id.* The APA, however, requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority. *Loper Bright Enterprises v. Raimondo* 603, U.S. 369 (2024). It follows that an exercise of

discretion may have occurred in excess of statutory authority or in violation of law. Courts have jurisdiction to consider this question and issue remedy where appropriate.

### B. The complaint states violation of law upon which relief may be granted.

#### a. The rescission of the 2021 deferred action policy is arbitrary and capricious

The administrative record does not support the agency decision to rescind the 2021 deferred action policy. An agency action is arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *California v. US Dep't of Ed*. 769 F. Supp. 3d 72*, 76* (D. Mass, 2025) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), 103 S. Ct. 2856, 77 L. Ed. 2d 443). The 2025 rescission meets all four of these possibilities. First, the Court must recognize that the primary impetus behind this rescission is the stated goal of "mass deportations." The White House, MASS DEPORTATIONS ARE IMPROVING AMERICANS' QUALITY OF LIFE, (Jan. 14, 2026). The Court need not consider the wisdom of the mass deportation policy to determine its impact. Here, a new administration rescinded the former administration's policy of deferred action because it sought to deport as many people as possible.

First, this constitutes a factor Congress did not intend the agency to consider. In its passage of the VTVPA, Congress intended to create a process for noncitizens to regularize their status if they were victims of certain crimes and cooperated with law enforcement. *See* Pub. L. No. 106-386. Certainly, it contemplated that enforcement of immigration laws might conflict with the goal

of protecting victims of crime, but it did not anticipate an agency that would wholly ignore that goal.

Next, the agency entirely failed to consider an important aspect of the problem. Like for the first prong, it is important that the 2025 rescission order ignores the purpose of the VTVPA. The agency fails to consider that willing participants in criminal investigation are *necessary* to enforcement. The recission policy does note that it will "coordinate and deconflict internally and with local, state, and other federal law enforcement, as appropriate, when determining whether to take civil immigration enforcement actions to ensure criminal investigative and other enforcement actions will not be compromised[.]" ICE Directive 11005.4. It does not, however consider that the recission itself will compromise criminal investigation. Furthermore, although agencies may change their policy priorities, the agency must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account. *Encino Motorcars, LLC. v. Navarro*, 579 U.S. 211, 212.

The decision also runs counter to the evidence before the agency and is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Evidence does not suggest that the agency considered the legal interests at play when issuing this recission. Instead, the priority of "total and efficient enforcement of immigration laws" seems to have taken priority over all other laws including the VTVPA. Defendants argue "nothing about the 2025 Interim Guidance undermines or fails to enforce the framework Congress crafted." Doc. 32 at 21. Plaintiff's factual position seems to contradict this claim. It would appear that not only does the 2025 Interim Guidance undermine the framework of the VTVPA, but that the agency purposefully adopted it to undermine that framework.

### b. The Defendants' Conduct Violates the Due Process Clause

Defendants assert that Plaintiff must raise any claim of a due process violation with the BIA and the First Circuit under 8 U.S.C. § 1252(b)(9). Similar to § 1252(g), however, 1252(b)(9) "does not present a jurisdictional bar" where those bringing suit are not "asking for a review of an order of removal," "the decision to seek removal," or the process by which… removability will be determined. *Jennings v. Rodriguez*, 583 U. S. 138 S. Ct. 830, 841, 200 L. Ed. 2d 122 (2018) (plurality opinion; *id*. 138 S. Ct. 830, 859, 200 L. Ed. 2d 122 (Breyer, J., dissenting). As the complaint outlines, the Defendants engaged in constitutionally impermissible gamesmanship when rescinding protections for applicants and slow-walking their determinations to expose them to arrest.

Furthermore, the change-in-position doctrine does not apply in this case. A standardized review process that effectively resembled adjudication is the most apt place to apply the change-in-position doctrine. *See Doe v. Noem* 152 F. 4th 272. Here, the recission lacks the requisite level of formality to trigger the doctrine.

### V.      Conclusion

"Congress in 1946 enacted the APA 'as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices.'" *Loper Birght* at 373. There may be few examples of a more appropriate application of its purpose. The Court should reject Defendants' motion to dismiss.

Respectfully submitted,

**Lucia Goncalves Moreira Oliveira**
**Adelio Bento de Oliveira**

By and through their counsel,

Dated: 2/25/2025

/s/ *Todd C. Pomerleau*
Todd C. Pomerleau, Esq.

Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077
Fax: (617) 367-0071
rubinpom@rubinpom.com
MA BBO#664974

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will

be sent to those indicated as non-registered participants.


Dated: 2/25/2025

/s/ *Todd C. Pomerleau*
Todd C. Pomerleau, Esq.