**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **LUCIA GONCALVES OLIVEIRA and ADELIO BENTO DE OLIVEIRA,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JOSEPH B. EDLOW, et al.,**<br><br>**Defendants.** | **Civil Action No. 25-13228-BEM** |

**ORDER**

**MURPHY, J.**

Before the Court is Defendants' motion to dismiss. For the reasons that follow, the Court will grant Defendants' motion as to Counts II–IV, and deny the motion as to Count I.

## I. Background

The factual and procedural background is set forth in more depth in *Oliveira v. Edlow* ("*Oliveira I*"), 2025 WL 3492110 (D. Mass. Dec. 4, 2025). In brief, Plaintiffs brought this suit challenging a 2025 Department of Homeland Security ("DHS") policy (the "2025 Policy") under the Administrative Procedure Act ("APA") and the Due Process Clause, and seeking a writ of mandamus. Dkt. 1 ("Complaint" or "Compl."). Plaintiffs subsequently moved for a temporary restraining order and preliminary injunction. Dkt. 2. This Court found Plaintiffs were likely to succeed on the merits of their APA claim and granted the preliminary injunction, thereby enjoining "Defendants . . . from implementing, instituting, maintaining, or giving effect to the 2025 Policy

. . . with respect to Plaintiffs." *Oliveira I*, 2025 WL 3492110, at *13.[1] On February 4, 2026, Defendants moved to dismiss for lack of jurisdiction and failure to state a claim. Dkts. 31–32.

## II. Legal Standard

"When faced with motions to dismiss under both [Rule] 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 456 (D. Mass. 2011) (quotation omitted), *aff'd*, 672 F.3d 64 (1st Cir. 2012). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010) (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). The Court, however, may also look beyond the pleadings to any evidentiary materials submitted by the parties to determine whether it has jurisdiction. *Martínez-Rivera v. Puerto Rico,* 812 F.3d 69, 74 (1st Cir. 2016).

Courts analyzing claims under Rule 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged

[1] Having found that Plaintiffs were likely to succeed on the merits of their APA claim, the Court did not address the merits of Plaintiffs' remaining arguments.

in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## III. **Discussion**

### A. **Jurisdiction**

Defendants first move to dismiss for lack of jurisdiction on the ground that 8 U.S.C. § 1252(g) ("section 1252(g)") strips district courts of jurisdiction "'to hear any cause or claim' challenging 'the decision or action' by the government to 'execute removal orders.'" Dkt. 32 at 8 (quoting 8 U.S.C. § 1252(g)).[2] This Court already concluded in *Oliveira I*, 2025 WL 3492110, at *7–9, that section 1252(g) does not preclude the Court from hearing Plaintiffs' claims, and the Court does not depart from that conclusion here.

### B. **Merits**

#### 1. **Count I: Arbitrary & Capricious**

As a threshold matter, Defendants argue that the 2025 Policy is not final agency action subject to review under the APA. Dkt. 32 at 12 (citing 5 U.S.C. § 704). For substantially the

[2] Defendants' remaining jurisdictional arguments, which concern 8 U.S.C. §§ 1252(a)(2)(B)(ii) and 1252(b)(9), are claim-specific and therefore addressed below, when the Court addresses the merits of the relevant claims. *See infra* Sections III.B.3–4. Defendants also raise other purportedly jurisdictional arguments—that the 2025 Policy is not final agency action and that the 2025 Policy constitutes agency action "committed to agency discretion"—which do not technically implicate subject matter jurisdiction. *See Oliveira I*, 2025 WL 3492110, at *8 n.31 ("[T]he APA is not, strictly speaking, a jurisdictional statute."). The Court addresses both of these arguments when addressing the merits of the APA claim. *See infra* Section III.B.1.

reasons articulated in *Oliveira I*, 2025 WL 3492110, at *9–10, the Court concludes that the 2025 Policy is final agency action subject to judicial review.

Defendants also argue that the 2025 Policy is action "committed to agency discretion by law," Dkt. 32 at 15 (quoting 5 U.S.C. § 701(a)(1)), because the 2025 Policy rescinded an ICE directive, "which by its very terms consisted of a pure 'exercise [of] prosecutorial discretion,'" *id.* at 16 (alteration in original) (quoting ICE Directive 11005.3 at 1). However, "the Court finds that the 2025 Policy is 'more than a non-enforcement policy,' making APA review appropriate." *Oliveira I*, 2025 WL 3492110, at *8 n.31 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020)).

Turning to the merits, the Court denies Defendants' motion to dismiss Count I for substantially the reasons set forth in *Oliveira I*. There, the Court found that Plaintiffs were likely to succeed on the merits of their arguments that DHS's issuance of the 2025 Policy was arbitrary and capricious for failing to address, or even acknowledge, "that withdrawing protections might chill non-citizen cooperation and '[weaken] the ability of law enforcement,'" directly contradicting the President's stated concern for "national security and public safety," and for failing to consider serious reliance interests. *Oliveira I*, 2025 WL 3492110, at *9–11 (alteration in original) (first quoting Pub. L. No. 106-386, § 1513(a)(2)(A); and then quoting 90 Fed. Reg. 8443, 8443 (Jan. 20, 2025)); *see also Immigr. Ctr. for Women & Child. v. Noem* ("*ICWC*"), 351 F.R.D. 324, 384 (C.D. Cal. 2026) (The 2025 Policy "reflects no consideration or acknowledgment of the concerns that animated Congressional legislation or Defendants' prior policies, let alone any reasoned explanation for rescinding them."); *id.* at 385 ("Defendants also failed to consider the 'serious reliance interests' of noncitizens who applied for the protections that Congress and the Defendants promised in connection with VAWA self-petitions, and U visa and T visa petitions.").

**2. Count II: Section 1227(d)**

Defendants first argue that Plaintiffs lack standing to assert this claim because, while Plaintiffs contend that "§ 1227(d)(1) prohibits DHS from removing individuals 'who have requested [an administrative] stay, without first seeking or obtaining a prima facie determination [on their U-visa applications] from USCIS,'" Plaintiffs themselves have not requested an administrative stay. Dkt. 32 at 25 (alterations in original) (emphasis omitted) (quoting Compl. ¶ 61). But the Complaint states that "[o]n or about September 19, 2025, the Plaintiffs re-filed the Motion to Reopen and Emergency Stay of Removal with the [Board of Immigration Appeals ("BIA")]," Compl. ¶ 43, and that the BIA subsequently denied the motion for a stay, *id.* ¶ 45. Accordingly, Plaintiffs have been directly impacted by DHS's alleged policy of "denying stay of removal for U Visa petitioners without first determining their prima facie eligibility for relief." *Id.* ¶ 62. Therefore, Defendants' motion to dismiss this claim for lack of standing is denied.

The Court turns next to the merits of Plaintiffs' argument that Defendants' "policy and practice of removing people with pending U [visas] who have requested a stay, without first seeking or obtaining a prima facie determination from USCIS," violates 8 U.S.C. § 1227(d)(1) ("section 1227(d)(1)"). *Id.* ¶ 61. Plaintiffs read too much into section 1227(d)(1)'s statement that "[*i*]*f* the Secretary of Homeland Security determines that an application [for a U visa] . . . sets forth a prima facie case for approval, the Secretary *may* grant the alien an administrative stay of a final order of removal." 8 U.S.C. § 1227(d)(1) (emphases added). The provision "says nothing about the timing of the prima facie determination relative to removal. Absent from § 1227(d)(1) is any language stating that the filing of a . . . U visa application grants an automatic stay of removal until the Secretary issues a prima facie determination." *Garcia v. Noem*, 2025 WL 3237502, at *4 (W.D. Wash. Nov. 20, 2025). *But see ICWC*, 351 F.R.D. at 391–92 (finding the plaintiffs likely

to succeed on the merits of a substantially similar claim). Accordingly, the Court grants Defendants' motion to dismiss as to Count II.

**3. Count III: Due Process**

In Count III, Plaintiffs argue that effectuating their removal before adjudicating their U visa or motion to reopen violates the Due Process Clause. Compl. ¶¶ 63–72. Defendants first argue that such a claim is barred by 8 U.S.C. § 1252(b)(9) ("section 1252(b)(9)"), which channels to the BIA and then the First Circuit "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter." However, section 1252(b)(9) has been narrowly construed to preclude only "review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Regents*, 591 U.S. at 19 (cleaned up); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018). Accordingly, section 1252(b)(9) does not apply to claims that do not fall squarely in one of those three categories, even if they otherwise implicate removal. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F.4th ----, 2026 WL 2797801, at *11 (1st Cir. Sep. 18, 2026) (rejecting section 1252(b)(9) argument because "this is not a case that seeks review of an order of removal, the decision to seek removal, or the process by which removability is determined" but rather "a case about the procedures DHS must follow when, after it decides to remove a person, it chooses to remove them to a country not identified in the removal order"); *see also Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007) ("With respect to section 1252(b)(9), ['arising from'] cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien."). "[T]his case challenges action that post-dates any of the three contexts identified in *Regents* and *Jennings*," and therefore is not barred by section 1252(b)(9). *D.V.D.*, 2026 WL 2797801, at *11.

The Court turns now to the merits of Plaintiffs' due process claim. Plaintiffs claim a liberty interest in "be[ing] free from undue interference while undertaking the process of filing a U Visa application and receiving a bona fide determination." Compl. ¶ 67. Certainly, some courts have recognized a cognizable interest in freedom from undue interference while applying for certain immigration benefits. However, in those cases, the plaintiffs generally identified concrete government actions that specifically interfered with their applications. *See, e.g.*, *Gonzalez v. Wesling*, 2026 WL 1765871, at *5–6 (D.R.I. June 19, 2026) (concluding that "[t]here is a cognizable liberty interest in noncitizens being free from undue interference while undertaking the agency-mandated processes of filing their immigration benefit applications" and that the petitioner's arrest "during his biometrics appointment frustrated his ability to submit the data that USCIS required of him as part of his U-Visa application"); *Fatty v. Nielsen*, 2018 WL 3491278, at *2 (W.D. Wash. July 20, 2018) (concluding that the plaintiff "has a liberty interest in preventing his removal" and that if he "is removed before his T visa adjudicated, he will be deprived of a viable defense to removability" because "physical presence in the United States is a condition of eligibility" for a T visa); *S.N.C. v. Sessions*, 2018 WL 6175902, at *6–7 (S.D.N.Y. Nov. 26, 2018) (same).

Plaintiffs, by contrast, have not alleged any specific way in which the government has interfered with their claimed liberty interest—the ability to apply for a U visa. *See* Compl. ¶ 39 (stating that counsel filed a U visa petition on Plaintiffs' behalf). And, unlike T visas, which require that a noncitizen be present in the United States to be eligible, *see* 8 C.F.R. § 214.202(b), U visas have no such requirement, *see* 8 C.F.R. § 214.14(b). The Court takes no position on whether a *different* claim arising out of a U visa application could implicate a liberty interest

cognizable under the Due Process Clause. But the allegations as pled here are insufficient to do so.

As to Plaintiffs' motion to reopen, this is the second motion to reopen Plaintiffs have filed with the BIA. Compl. ¶¶ 40, 43, 45; *see also Oliveira I*, 2025 WL 3492110, at *5. After filing a first motion to reopen, to which noncitizens have a statutory right, subsequent motions to reopen are at the discretion of the BIA.[3] Accordingly, such motions do not give rise to an interest cognizable under the Due Process Clause. *See Lemus v. Sessions*, 900 F.3d 15, 19 (1st Cir. 2018) ("[T]he BIA's exercise of its purely discretionary sua sponte authority [to reopen removal proceedings] does not create a cognizable liberty interest." (internal quotation marks omitted)); *Chun Xin Chi v. Holder*, 606 F.3d 6, 10 (1st Cir. 2010) ("A reopening is discretionary relief. Because an alien has no right or entitlement to a reopening, he or she has no protected liberty or property interest in that remedy. Consequently, we see no basis here for a due process claim." (citations omitted) (emphasis omitted)); *Naeem v. Gonzales*, 469 F.3d 33, 38–39 (1st Cir. 2006) ("Reopening . . . [is] discretionary in nature; none of these forms of relief is an entitlement or a right. It follows inexorably that an alien has no protected property or liberty interest in reopening proceedings." (footnote omitted)).

Accordingly, Defendants' motion to dismiss is granted as to Count III.

---

[3] "When Congress enacted [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")], it codified a limited, statutory right to file a motion to reopen: A noncitizen could file one motion within 90 days of a final removal order, subject to certain exceptions." *Phimmady v. Bondi*, 128 F.4th 18, 21 (1st Cir. 2025) (citing 8 U.S.C. § 1229a(c)(7)(A), (c)(7)(C)(i)-(iv)). "In addition to statutory motions to reopen under IIRIRA, the BIA also has the authority to reopen immigration proceedings at any time based on its own regulation, 8 C.F.R. § 1003.2(a). . . . The agency and litigants refer to a request under this regulation as a motion for sua sponte reopening." *Id.* at 21–22.

#### 4. **Count IV: Mandamus**

In Count IV,[4] Plaintiffs ask this Court to "compel Defendants USCIS and the BIA" to issue a bona fide determination on Plaintiffs' U visa application and to adjudicate Plaintiffs' motion to reopen, respectively. Compl. ¶¶ 73–76.

The federal mandamus statute provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, mandamus relief is narrow. It "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984); *see also Georges v. Quinn*, 853 F.2d 994, 995 (1st Cir. 1988) ("[F]or appellant to qualify for mandamus relief under § 1361, he would have to show that he . . . has no other adequate remedy.").

However, many courts have concluded that, where a plaintiff could pursue relief for undue delay under the APA, mandamus is unavailable. *See, e.g.*, *Benzman v. Whitman*, 523 F.3d 119, 132 (2d Cir. 2008) (affirming dismissal because "Plaintiffs' claim for mandamus duplicates the APA count, both as to the underlying allegedly mandatory duties and as to the relief sought"); *Thompson v. U.S. Dep't of Lab.*, 813 F.2d 48, 52 (3d Cir. 1987) ("Since, as we have concluded, Thompson has an adequate remedy under the APA, he is not entitled to relief under Section 1361."); *Cohen v. Jaddou*, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) ("Plaintiff cannot pursue a Mandamus claim when an adequate remedy is available under the APA."); *Doe v. Mayorkas*, 2023 WL 3175443, at *2 (E.D. Pa. May 1, 2023) ("The district court [i]s authorized by

[4] The mandamus claim is erroneously named Count III in the Complaint, such that both the Due Process claim and the mandamus claim are called "Claim III." For the sake of clarity, the Court refers to the mandamus claim as "Count IV" throughout this order.

the APA to provide a remedy for undue agency delay. Accordingly, because the APA provides a remedy for Plaintiff Jane Doe's complaint of undue delay, mandamus relief under § 1361 is not available." (alteration in original) (citation and internal quotation marks omitted)).

As a result, mandamus relief is unavailable to Plaintiffs and this Court lacks subject-matter jurisdiction over this claim.[5] *See Moriarty v. Colvin*, 2014 WL 4966083, at *4 (D. Mass. Sept. 30, 2014) ("[T]he 'jurisdiction' provided by section 1361 is predicated on a plaintiff having stated a plausible claim that he has no adequate remedy."); *cf. Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 2022 WL 658658, *4 (D. Mass. Mar. 4, 2022) (concluding "the Court does not have subject-matter jurisdiction under 28 U.S.C. § 1361" because "defendant does not owe plaintiff a clear nondiscretionary duty").[6] Thus, Defendants' motion to dismiss is granted as to Count IV.

## I. <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Counts II–IV and DENIED as to Count I.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: September 25, 2026

---

[5] Having concluded that the Court lacks subject-matter jurisdiction under 28 U.S.C. § 1361, the Court need not address Defendants' argument that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of jurisdiction to review discretionary decisions of the Secretary. *See* Dkt. 32 at 17.

[6] Even assuming, arguendo, mandamus *were* available, "case law is clear that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Chatman v. Hernandez*, 805 F.2d 453, 456 (1st Cir. 1986). The 18-month delay Plaintiffs are faced with is not egregious enough to warrant such relief. *See Towns of Wellesley, Concord & Norwood, Mass. v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987) (noting that "cases in which courts have afforded relief have involved delays of years" and concluding that a fourteen-month delay did not warrant mandamus); *Morgovsky v. Dep't of Homeland Sec.*, 517 F. Supp. 2d 581, 584 (D. Mass. 2007) ("[I]n the absence of a clearly established duty to act on a naturalization petition within a prescribed period of time, the court agrees with those of its sister courts that have held that the [Mandamus and Venue Act] attaches only in the most egregious of cases. A delay of some sixteen months . . . , while perhaps unusual, is not so extreme or outrageous as to warrant extraordinary relief."); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) ("[A] delay of [two years] does not typically require judicial intervention").